UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KYLE LEE OBEN,

        Plaintiff,                Case No. 1:20-cv-1050

v.                                     Honorable Paul L. Maloney

CORIZON et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Corizon, Jones, Huyge, Simon, VanNortrick, Moody, Sikama, and the Michigan Department of Corrections. The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claims against Defendants Delacruz and Calkins.

**Discussion**

**I.     Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the following Defendants: Corizon Medical, Inc.; Deborah Jones, R.N.; David Huyge, P.A.; Sergeant Unknown Delacruz; Grievance Coordinator Eric Simon; Mary Calkins, R.N.; Ericka VanNortrick, R.N.; Amy Moody, R.N.; Keith Sikama, R.N.; and the MDOC.

Plaintiff alleges that on September 23, 2020, at approximately 11:15 a.m., Defendant Delacruz forcefully grabbed Plaintiff's wrists and pulled his arms through the door slot while he was placing Plaintiff in handcuffs, which caused injury to Plaintiff's hands and fingers. Later that day, Plaintiff asked Defendant Calkins for medical assistance.  Defendant Calkins agreed that something was wrong with Plaintiff's hands, but she refused to help him.  Plaintiff made a request for a grievance form from Defendant Simon, but his request was denied on September 24, 2020.

On September 25, 2020, Plaintiff was placed in handcuffs and taken to the B wing to see Defendant Jones, who took Plaintiff's vitals and squeezed his fingertips, which were not injured.  Defendant Jones noted that Plaintiff's fingers were warm to the touch, so there was no nerve damage.  However, Defendant Jones was wearing gloves, so she would not have been able to tell if Plaintiff's fingers were cold.

On September 26, 2020, Plaintiff asked Defendant VanNortrick for medical assistance for his injuries, but was told to fill out a kite.  On September 28 and 29 of 2020, Defendant Calkins ignored Plaintiff when he asked for assistance, in disregard to the fact that he had severe swelling and bruising on his hands and fingers.  Plaintiff requested a grievance form

2

on September 28, 2020, which was denied by Defendant Simon on September 29, 2020. On September 30, 2020, Plaintiff stopped Defendant Calkins while she was doing rounds and showed her his hands. Defendant Calkins told Plaintiff to quit telling her about his hands because she did not care. On October 1, 2020, Defendant Calkins responded to Plaintiff's request for help by asking him if he was on hormones, because he was acting like a female. On the same date, Defendant Moody checked Plaintiff's vitals and determined that he had high blood pressure.

On October 6, 2020, Plaintiff notified Defendant Calkins that his wound had developed a foul odor and that "every finger, his hand, and wrist" were full of some form of liquid. (ECF No. 1, PageID.5.) Defendant Calkins told Plaintiff that it sounded like a personal problem. On October 7, 2020, Corrections Officers Niko and Kassa told health care that Plaintiff was in bad condition, with swollen fingers, a rapid heart rate, and that he felt like he might pass out. Defendant VanNortrick came to the unit and agreed that something was wrong. She told Plaintiff to lie down and that she would call the doctor. Defendant VanNortrick returned a while later and checked Plaintiff's vital signs. She then told Plaintiff that he would be seen by the doctor in the morning and gave him Tylenol and Ibuprofen. She also ordered ice for Plaintiff's swelling and stated that his injuries were not life threatening.

On October 8, 2020, at approximately 7:50 p.m., Defendant VanNortrick was passing out medications when Plaintiff told her that he had not been seen by the doctor. Defendant VanNortick told Plaintiff that his appointment was for the following day. Defendant VanNortrick declined to check Plaintiff's vitals even though he was lightheaded and was having trouble breathing. On October 12, 2020, Defendant Huyge examined Plaintiff's hands by having him stick them through the food slot. Defendant Huyge determined that a tendon in Plaintiff's finger had been torn and that his finger was infected. Plaintiff asked for an MRI, but Defendant Huyge

3

refused. Plaintiff states that he suffered a gunshot to his left hand in 2014, leaving him with limited mobility and muscle strength, which makes his new injuries even more detrimental to his ability to function independently.

Plaintiff states that Defendants violated his First Amendment right to be free from retaliation and his Eighth Amendment right to necessary medical care and to be free from excessive force. Plaintiff seeks damages and equitable relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     MDOC as Defendant

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.  Therefore, the Court dismisses the MDOC.

## IV.     Defendant Sikama

The Court notes that Plaintiff fails to name Defendants Sikama in the body of his complaint or to allege any specific facts with regard to Defendant Sikama.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*,

6

No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because Plaintiff fails to even mention Defendant Sikama in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

**V.     Defendant Simon**

Plaintiff claims that Defendant Simon violated his rights when he failed to provide him with grievance forms upon his request. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Simon's conduct did not deprive him of due process.

Nor did Defendant Simon's actions bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16

7

(6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Simon.

**VI.    First Amendment Retaliation**

Plaintiff makes a conclusory assertion that Defendants retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

8

conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff neither specifically alleges the protected conduct he was engaged in, nor alleges facts in support of his claim that Defendants were motivated by retaliatory animus. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.  In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added).  Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).  Because Plaintiff's assertion that the denial of health care was retaliatiory is entirely conclusory, his First Amendment claims are properly dismissed.

**VII.   Eighth Amendment denial of medical care**

Plaintiff alleges that Defendants failed to provide him with necessary health care in violation of the Eighth Amendment.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle*

9

*v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 466, 451 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to

10

establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

11

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that Defendant Huyge saw him on October 12, 2020, and diagnosed Plaintiff as having a torn tendon and an infection. Plaintiff complains that Defendant Huyge's diagnosis could not have been accurate because he refused to allow Plaintiff to have an MRI. Plaintiff does not allege that Defendant Huyge failed to provide him with any treatment. According to the exhibits to Plaintiff's complaint, Defendant Huyge placed Plaintiff on antibiotics

following his examination on October 12, 2020. (ECF No. 1-1, PageID.28.) Defendant Huyge's judgment that an MRI was not warranted on October 12, 2020, is not a denial of treatment. The plaintiff in *Estelle v. Gamble* complained of back pain and the doctors treated him with bed rest, muscle relaxants, and pain relievers. *Estelle*, 429 U.S. at 107. Gamble wanted additional diagnostic tests and forms of treatment to alleviate his back pain, but the Supreme Court concluded he had failed to state a claim:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

*Estelle*, 429 U.S. at 107. Courts have routinely relied on *Estelle* to conclude that failure to order an MRI is not deliberate indifference. *See, e.g., Riddick v. Maurer*, 730 F. App'x 34 (2d Cir. 2018); *Dykeman v. Ahsan*, 560 F. App'x 129 (3d Cir. 2014); *Laws v. Wexford Health Sources, Inc.*, 721 F. App'x 544 (7th Cir. 2018); *Tucker v. Meyer*, 165 F. App'x 590 (10th Cir. 2006); *Owen v. Corizon Health, Inc.*, 703 F. App'x 844 (11th Cir. 2017); *Thompson v. Corr. Med. Servs.* No. 09-14483, 2016 WL 1118639 (E.D. Mich. Mar. 21, 2016); *Brooks v. Jones*, 1:14-cv-631, 2014 WL 7212897 (W.D. Mich. Dec. 17, 2014). Because Plaintiff's claim against Defendant Huyge is based solely on the refusal to order an MRI, he fails to state an Eighth Amendment claim against Defendant Huyge.

Plaintiff's only allegation against Defendant Moody is that she checked his vitals on October 1, 2020, and found that he had high blood pressure. Because Plaintiff fails to allege facts showing that Defendant Moody acted with deliberate indifference to a serious medical need, his claim against Defendant Moody is properly dismissed.

Plaintiff alleges that he was seen by Defendant Jones on September 25, 2020. Defendant Jones examined Plaintiff while wearing gloves, and noted that Plaintiff's fingers were

warm to the touch, so there was no nerve damage. Plaintiff's allegations do not support an Eighth Amendment claim against Defendant Jones.

Plaintiff has failed to allege facts in support of an Eighth Amendment claim against Defendant VanNortrick. On October 7, 2020, Defendant VanNortrick responded to a report that Plaintiff was in bad condition. After seeing Plaintiff, she agreed that something was wrong and told Plaintiff to lie down and that she would call the doctor. Defendant VanNortrick examined Plaintiff and gave him pain medication. She informed Plaintiff that his injuries were not life threatening and that she would schedule him to see a doctor. On October 8, 2020, Defendant VanNortrick told Plaintiff that he would be seen by the doctor on the following day. Plaintiff was seen by the doctor on October 12, 2020. Plaintiff has not established that he was denied medical care by Defendant. At best, Plaintiff alleges that he experienced a short delay before he was seen by a doctor. Plaintiff has not asserted that the short delay caused a serious detrimental effect on his medical condition. Nor does Plaintiff allege facts showing that Defendant VanNortrick was responsible for the delay in Plaintiff seeing the doctor. Therefore, the Court will dismiss Plaintiff's claim against Defendant VanNortrick.

Finally, Plaintiff claims that Defendant Calkins refused to help Plaintiff despite agreeing that he there was something wrong with his hands. Defendant Calkins refused Plaintiff's requests for medical attention on September 24, 28, 29, and 30, as well as on October 1 and 6 of 2020. Plaintiff states that his hands were obviously bruised and swollen and that, as of October 6, 2020, his wound had developed a foul odor and that "every finger, his hand, and wrist" were full of some form of liquid. As noted above, Plaintiff was subsequently found to have an infection and a torn tendon. The Court concludes that Plaintiff's allegations against Defendant Calkins support

14

a claim that she was deliberately indifferent to his serious medical need.  Therefore, Plaintiff's Eighth Amendment claim against Defendant Calkins is not properly dismissed on initial review.

**VIII.   Eighth Amendment excessive force**

Plaintiff claims that Defendant Delacruz subjected him to excessive force in violation of the Eighth Amendment.  As stated above, the Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. Const. amend. VIII.  But not every shove or restraint gives rise to a constitutional violation.  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).  On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law."  *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim.  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  First, "[t]he subjective component focuses on the state of mind of the prison officials."  *Williams*, 631 F.3d at 383.  We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'"  *Hudson*, 503 U.S. at 8, (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth

15

Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Plaintiff alleges that his hands and fingers were injured when Defendant Delacruz forcefully grabbed his wrists and pulled his arms through the door slot while he was placing him in handcuffs. Plaintiff also alleges that this conduct result in a torn tendon and an infection in at least one hand. The Court concludes that on the face of the complaint, Plaintiff's allegations are sufficient to state an excessive force claim against Defendant Delacruz.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Corizon, Jones, Huyge, Simon, VanNortrick, Moody, Sikama, and the Michigan Department of Corrections will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation claims against Defendants Delacruz and Calkins. Plaintiff's Eighth Amendment claims against Defendants Delacruz and Calkins remain in the case.

An order consistent with this opinion will be entered.

Dated:   November 30, 2020                         /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge